Brem Moldovsky, Esq.
Brem Moldovsky, L.L.C.
Attorney for the Plaintiff
Esquire Identification No.: 79485
100 N. 18th Street, Suite 300
Philadelphia, Pa 19103
Phone: (215) 546-9957

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**CIVIL DIVISION**

| | |
|---|---|
| GRAS LAWN LLC<br><br>                    Plaintiff,<br><br>v.<br><br>REAL PROPERTIES MANAGEMENT<br>                    Defendant. | Case No: _____<br><br>Civil Action<br><br>JURY TRIAL DEMANDED |

      Plaintiff Gras Lawn LLC (hereinafter "Gras Lawn"), by and through their attorney, Brem Moldovsky, Esq., by way of Complaint against Real Properties Management (hereinafter "Real Properties"), respectfully states and alleges:

## THE NATURE OF THE ACTION

1. This action arises from a series of transactions whereby Gras Lawn, a landscaping company, agreed to provide and did in fact provide snow and ice removal services for five Real Properties buildings throughout the course of the 2021-2022 winter season in exchange for payment.

2. The parties maintained a working business relationship throughout the 2021-2022 winter season, during which Gras Lawn substantially performed pursuant to the agreements and arrangements between the parties and sent Real Properties invoices for services rendered.

3. At the end of the season, Real Properties had accepted all and did not object to any of the invoices sent by Gras Lawn, but unfortunately failed to make the agreed-upon payments.

4. As of July 2022, Real Properties' open invoices totaled $110,081.07.

5. Gras Lawn repeatedly contacted Real Properties' representatives seeking payment and assurances that payments, which amounts were undisputed, would be made.

6. Real Properties made multiple promises to Gras Lawn that payments were forthcoming over a three-month period.

7. When payments continued to not be made, Gras Lawn raised bringing legal action in a demand letter. Real Properties subsequently paid a small portion of the overall balance in two installments: $10,385.85 on August 8, 2022, and $16,582.45 on August 30, 2022.

8. A balance of $83,112.77 remains unpaid and is sought here along with attorney's fees and court costs (pursuant to the parties' agreements) and interest at the highest rate allowable by law and the parties' agreements here.

## PARTIES

9. Gras Lawn is a New Jersey Limited Liability Company with a principal place of business located at 950 Airport Road, Lakewood, New Jersey 08701. Gras Lawn is foreign registered to do business in Pennsylvania with an address at 1735 Market Street, Suite A #455, Philadelphia, PA 19103.

10. Real Properties Management is a Pennsylvania Limited Liability Company with its principal place of business located at 371 East Street Road, Trevose, PA 19053.

## JURISDICTION AND VENUE

11. Jurisdiction in this Court is proper under 28 U.S.C. §1332(a) because Plaintiff is a corporation registered and domesticated in the State of New Jersey, the LLC defendant is a limited liability company registered in the State of Pennsylvania, and the amount in controversy exceeds $75,000.

12. Venue in this Court is proper under 28 U.S.C. §1391(b)(2) because a very substantial part of the events or omissions giving rise to the claim occurred in the State of Pennsylvania insofar as Plaintiffs rendered services on properties located in Pennsylvania and Defendant carries out their activities (property management) which are the subject of this lawsuit in Pennsylvania.

**FACTUAL BACKGROUND**

**THE PARTIES ENTER INTO CONTRACTS FOR SERVICES AND PAYMENTS**

13. During the month of November 2021, Real Properties, a property management company, entered into snow plowing and ice management contracts with Gras Lawn, a landscaping company, for five (5) apartment complexes. True and correct copies of the contracts are attached hereto as Exhibit "A" and incorporated herein by reference as if set forth at length.

14. The five contracts were to service the following properties:

   a. Rosewood Court Apartments East and West, 345 E County Line Road and 45 Norristown Road, Hatboro, PA 19040 (hereinafter "Rosewood").

   b. Sandalwood Apartments, 9305 Ashton Road, Philadelphia, PA 19116 (hereinafter "Sandalwood").

   c. Station Walk Apartments, 13659 Philmont Ave, Philadelphia, PA 19116 (hereinafter "Station Walk").

   d. Timbercove Apartments, 8529 Rising Sun Ave, Philadelphia, PA 19116 (hereinafter "Timbercove").

   e. Tomlinson Court, 1770 Tomlinson Road, Philadelphia, PA 19116 (hereinafter "Tomlinson").

15. The contracts provided for snow and ice removal beginning November 1, 2021 through mid-April 2022. See, Exhibit "A" at pp. 1, 10, 19, 28, and 37.

16. The contracts stated that Gras Lawn would provide services per snowfall event, with payment due and payable upon receipt of Gras Lawn's invoices. See, Exhibit "A" at 4, 13, 22, 31, 40.

17. Services were priced out and agreed by the parties in advance of the work performed according to the amount of snow and ice accumulation and the areas where snow removal took place.  See, Exhibit "A" at 4, 13, 22, 31, 40.

18. The contracts provided for Real Properties to reimburse Gras Lawn for all costs and expenses, including attorneys' fees and court costs, reasonably incurred by Gras Lawn in collecting overdue service fees. See, Exhibit "A" at 4, 13, 22, 31, 40.

**GRAS LAWN PROPERLY PERFORMED SNOW AND ICE REMOVAL SERVICES TO REAL PROPERTIES' SATISFACTION**

19. Gras Lawn performed snow and ice removal services throughout the winter season in accordance with the contractual provisions and without complaint from Real Properties.

**GRAS LAWN PROVIDED INVOICES TO REAL PROPERTIES**

20. Between January and April 2022, Gras Lawn regularly provided Real Properties with invoices for services rendered. Real Properties confirmed receipt of these invoices without objection and paid some of them.

21.  Between January and February 2022, Gras Lawn sent Real Properties the following thirty-five invoices, listed chronologically:

   a.   January 2: #24261 (Sandalwood, $620.02) and #24265 (Station Walk, $1,257.34).

   b.   January 4: #24095 (Tomlinson, $3,461.24) and #24097 (Timbercove, $1,821.54).

   c.   January 5: #24098 (Timbercove, $910.77) and #24099 (Tomlinson, $1,730.62).

   d.   January 7: #24267 (Station Walk, $6,291.49) and #24258 (Rosewood, $13,585.61).

   e.   January 8: #24102 (Timbercove, $3,962.20); #24106 (Tomlinson, $6,191.46); and

#24262 (Sandalwood, $3,028.70).

f. January 9: #24269 (Station Walk, $1,257.34) and #24259 (Rosewood, $2,406.18).

g. January 10: #24198 (Timbercove, $910.77) and #24197 (Tomlinson, $1,730.62).

h. January 16: #24307 (Station Walk, $1,257.34) and #24305 (Rosewood, $2,406.18).

i. January 20: #25838 (Sandalwood, $620.02) and #25844 (Station Walk, $2,514.68).

j. January 21: #24507 (Timbercove, $1,821.54).

k. January 23: #25839 (Sandalwood, $620.02); #26543 (Rosewood, $2,406.28) and #25845 (Station Walk, $1,257.34).

l. January 31: #25011 (Tomlinson, $14,822.15) and #25010 (Timbercove, $8,307.53).

m. February 1: #25846 (Station Walk, $11,095.84).

n. February 7: #25062 (Timbercove, $1,821.54).

o. February 12: #25848 (Station Walk, $1,257.34).

p. February 13: #25842 (Sandalwood, $1,240.04).

q. February 14: #25248 (Rosewood, $1,285.16); #25250 (Tomlinson, $1,730.62); and #25249 (Timbercove, $910.77).

r. February 24: #25843 (Sandalwood, $620.02); #25849 (Station Walk, $2,514.68); and #26586 (Rosewood, $2,406.18).

True and correct copies of the invoices stated here are attached hereto as Exhibit "B" in order of invoice number and incorporated herein by reference as if set forth at length.

22. The above-listed invoices totaled $110,081.07.

23. Real Properties confirmed receipt of all above-listed invoices without objection. True and correct copies of Real Properties' email confirmations are attached hereto as Exhibit "C" and incorporated herein by reference as if set forth at length.

**DEFENDANT FAILS TO MAKE PAYEMNTS**

24. On May 6, 2022, Dolores Williams, an agent of Real Properties, requested by email that all then-open invoices be sent to her for payment. True and correct copies of correspondence between Gras Lawn and Real Properties are attached hereto as Exhibit "D" and incorporated herein by reference as if set forth at length.

25. On May 9, Judy Pollack, the account coordinator at Gras Lawn, emailed Ms. Williams the thirty-five remaining open invoices, totaling $110,081.07. See, Exhibit "D" at 9.

26. On May 17, 2022, Ms. Pollack emailed Ms. Williams and Amanda Rainville, the director of operations at Real Properties, requesting a status update on payment of the outstanding invoices. See, Exhibit "D" at 8.

27. On May 19, 2022, Ms. Williams responded to Ms. Pollack stating that all open invoices had been entered into the Real Properties system and were awaiting the next check run. Ms. Williams stated that checks would run before the end of the next week. See, Exhibit "D" at 7-8.

28. Despite these assurances, Gras Lawn received no payments in the month of May.

**REAL PROPERTIES CONTINUES IN FAILING TO MAKE AGREED UPON-PAYMENTS**

29. On June 7, 2022, Esther Unger, a Gras Lawn representative, emailed Ms. Rainville asking for confirmation of the open balance and an update on when payment would be made. Ms. Rainville did not respond. See, Exhibit "D" at 4.

30. On June 9, 2022 Ms. Unger again emailed Ms. Rainville asking when payment would be processed. Ms. Rainville did not respond. See, Exhibit "D" at 4.

31. On June 13, 2022, Ms. Unger again emailed Ms. Rainville, asking about the status of payment. Ms. Rainville did not respond. See, Exhibit "D" at 4.

32. On June 16, 2022, Ms. Pollack emailed Ms. Rainville and Danielle Bishop, a regional

property manager at Real Properties, again asking for an update on payment. See, Exhibit "D" at 3.

## REAL PROPERTIES MAKES PROMISES TO PAY

33. On June 16, 2022, Ms. Rainville replied to Ms. Pollack's email stating checks were being processed. Ms. Rainville stated that as soon as payments were available and signed, she would reach out with check numbers and mailing dates. See, Exhibit "D" at 3.

34. On July 5, 2022 Ms. Unger emailed Ms. Rainville stating no payment had been received. Ms. Rainville did not respond. See, Exhibit "D" at 2.

35. On July 6, 2022, Ms. Unger again emailed Ms. Rainville asking for a status update on the overdue payments. See, Exhibit "D" at 2.

36. On July 8, 2022, Ms. Rainville emailed Ms. Unger stating checks had been cut on June 14 and were awaiting signatures. Ms. Rainville stated that the owners of Real Properties were out of the country. Ms. Rainville stated that she would contact Gras Lawn when the checks were sent. See, Exhibit "D" at 2.

37. Later, on July 8, Jack Labko, the Chief Executive Officer of Gras Lawn, emailed Ms. Rainville expressing his concern about the status of the invoices in excess of $100,000, which were at that point three to four months overdue. Ms. Rainville did not respond. See, Exhibit "D" at 1-2.

38. On July 15, 2022, Ms. Unger emailed Ms. Rainville asking when the owners would be back to sign the checks claimed to be cut on June 14. Ms. Rainville did not respond. See, Exhibit "D" at 1.

39. On July 21, 2022, Ms. Unger emailed Ms. Rainville asking when she would respond. Ms. Rainville did not respond. See, Exhibit "D" at 1.

## GRAS LAWN MAKES DEMANDS FOR PAYMENT

40. On July 22, 2022, with payments now over four months overdue, Mr. Labko emailed Ms. Rainville stating that if Real Properties did not confirm payment confirmation by July 15, Gras Lawn would initiate legal action. See, Exhibit "D" at 1.

41. Ms. Rainville did not respond to Mr. Labko's July 22 email.

42. On July 28, 2022, six weeks after Ms. Rainville stated that checks had been cut, Gras Lawn, through their legal counsel, sent Real Properties a demand letter for the outstanding balance of $110,081.71. A true and correct copy of the demand letter is attached hereto as Exhibit "E" and incorporated herein by reference as if set forth at length.

43. The demand letter stated that Gras Lawn would commence a lawsuit against Real Properties if the outstanding payments were not received on or before August 11, 2022. See, Exhibit "E".

## REAL PROPERTIES MAKES PARTIAL PAYMENTS

44. On August 8, 2022, Real Properties made a partial payment to Gras Lawn in the amount of $10,385.85.

45. The invoices paid on August 8, 2022 were:

    a. Rosewood: #25248 and #26543, totaling $3,691.34; and

    b. Timbercove: #24102; #24097; and #24098, totaling $6,694.51.

See, Exhibit "B" at pages 22, 34, 5, 2, and 3.

46. On August 30, 2022, Real Properties made another partial payment to Gras Lawn in the amount of $16,582.45.

47. The invoices paid on August 30, 2022 were:

    a. Rosewood: #26586, totaling $2,406.18.

    b.   Sandalwood: #24261; #25838; #25839; and #25843, totaling $2,480.08.

    c.   Station Walk: #24265 and #25849, totaling $3,772.02.

    d.   Timbercove: #24198 and #24507, totaling $2,732.31.

    e.   Tomlinson: #24095 and #24099, totaling $5,191.86.

See Exhibit "B" at pages 35, 11, 25, 26, 28, 13, 33, 8, 18, 1, and 4.

48. There remains an unpaid balance of $83,112.77 in outstanding invoices, including invoices #24106; 24197; 24258; 24259; 24262; 24267; 24269; 24305; 24307; 25010; 25011; 25062; 25249; 25250; 25842; 25844; 25845; 25846; and 25848. See Exhibit "B" at pages 6, 7, 9, 10, 12, 14, 15, 16, 17, 19, 20, 21, 23, 24, 27, 29, 30, 31, 32.

49. Despite repeated demands and promises for payment and partial payments, this outstanding balance of $83,112.77 has not been paid and is overdue with interest and attorney's fees due to be paid with it pursuant to the parties' agreements and law.

## COUNT ONE
## BREACH OF CONTRACT

50. Gras Lawn repeats and re-alleges all of the above and below paragraphs as though each were fully set forth herein.

51. In November 2021, Gras Lawn and Real Properties entered into a set of agreements, pursuant to which Gras Lawn agreed to perform snow removal and ice management services in exchange for payment during the 2021-2022 winter season for Real Properties.

52. Gras Lawn has satisfied such promise by performing the agreed upon work.

53. Real Properties has a contractual obligation to pay for the services it received.

54. Real Properties has breached its obligation by failing to pay for the services it received.

55. As a result of Real Properties' breach, Gras has been damaged in an amount not less that the Balance Owed, plus attorney's fees and costs and interest thereon.

56. Gras Lawn is owed the Balance Owed, plus interest thereon.

WHEREFORE, Gras Lawn requests damages in the amount of $83,112.77 plus interest from the time of non-payment and attorney's fees pursuant to the parties' agreements and law.

## COUNT TWO
## ATTORNEY'S FEES

57. Gras Lawn repeats and re-alleges all of the above and below paragraphs as though each were fully set forth herein.

58. Each of the five (5) contracts between Gras Lawn and Real Properties provides that Real Properties shall reimburse Gras Lawn for all costs and expenses, including attorney's fees, which are reasonably incurred by Gras Lawn in collecting overdue service fees. See Exhibit "A" at 4, 13, 22, 31, and 40.

59. After numerous attempts to settle the invoices over the course of four months, Gras Lawn has retained legal counsel to help them recover the payments owed by Real Properties.

60. In accordance with the language of the contracts, Gras Lawn is entitled to the costs, expenses, attorney's fees, court costs, etc. incurred in collecting the overdue payments here.

61. Costs, expenses, legal fees, court costs, etc. were reasonably and necessarily incurred here due to the Defendant's beaches and failures to pay.

62. Costs, expenses, legal fees, court costs, etc. incurred here are reasonable under the circumstances and the parties' agreements, and this includes attorney fees at reasonable industry hourly rates which have been and continue to be incurred here.

WHEREFORE, Gras Lawn requests damages in the amount of $83,112.77 plus interest from the time of non-payment and attorney's fees pursuant to the parties' agreements and law.

## COUNT THREE

**ACCOUNT STATED**

63. Gras Lawn repeats and re-alleges all of the above and below paragraphs as though each were fully set forth herein.

64. Despite repeated good faith demands for payment due as reflected in the timely, received, acknowledged and uncontested invoices attached hereto as Exhibit "B" and the multiple email communications attached hereto as Exhibit "D", Real Properties has failed to pay for services rendered pursuant to the agreements between the parties.

65. The parties agreed to the work and pricing in the invoices.

66. Gras Lawn received confirmations of receipt without complaint from Real Properties for each and every overdue invoice sent by Gras Lawn, including those at issue in this complaint. See, Exhibit "C".

67. Gras Lawn made several requests for the overdue payments between May and July 2022.

68. In response to Gras Lawn's requests for overdue payments, Real Properties repeatedly stated that payment was in the process of being finalized and would be mailed shortly.

69. Real Properties made statements and promises of payment.

70. Real Properties never disputed the amount of the overdue balance.

71. Real Properties made partial payments to Gras Lawn in August 2022.

72. To the date of this complaint, an outstanding balance of $83,112.77 remains.

73. Therefore, Gras Lawn has been damaged in an amount not less than the owed balance, plus expenses, costs, attorney's fees, court costs and interest thereon.

74. WHEREFORE, Gras Lawn requests damages in the amount of $83,112.77 plus interest from the time of non-payment and attorney's fees pursuant to the parties' agreements and law.

**COUNT FOUR**
**QUANTUM MERUIT**

75. Gras Lawn repeats and re-alleges all of the above and below paragraphs as though each were fully set forth herein.

76. Gras Lawn provided services that were professional, satisfactory, and within the purview of the arrangements between the parties

77. Real Properties did not complain about Gras Lawn's services nor raise any issues related to those services.

78. Real Properties accepted the services without objection.

79. Gras Lawn has not been compensated for the services rendered or the value of such services pursuant to the arrangements and equity.

80. The value of the services was and is at least the value that was charged, per the arrangements reflected in the invoices and written agreements.  See, Exhibit "B".

81. Real Properties therefore derived a substantial benefit from the services provided and Gras Lawn is entitled to the reasonable value of those services, which reasonable value is evidenced by the parties' agreed upon terms and industry norms.

82. As a result of the foregoing, Gras Lawn has been damaged in an amount not less than the Balance Owed, plus interest thereon.

WHEREFORE, Gras Lawn requests damages in the amount of $83,112.77 plus interest from the time of non-payment and attorney's fees pursuant to the parties' agreements and law.

## COUNT FIVE
## UNJUST ENRICHMENT

83. Gras Lawn repeats and re-alleges all of the above and below paragraphs  as though each were fully set forth herein.

84. Gras Lawn performed snow removal and ice management services for Real Properties according to specifications arranged by the parties.

85. Real Properties retained the benefit of the bargain by appreciating and accepting the service.

86. Real Properties has not paid Gras Lawn the value of or balance due for the outstanding invoices for service.

87. Real Properties has been unjustly enriched at the expense of Gras Lawn.

88. Real Properties' unjust enrichment has damaged Gras Lawn in an amount not less that the Balance Owed, plus interest thereon.

WHEREFORE, Gras Lawn requests damages in the amount of $83,112.77 plus interest from the time of non-payment and attorney's fees pursuant to the parties' agreements and law.

DATED:	November 3, 2022
	Philadelphia, Pennsylvania

BREM MOLDOVSKY, LLC

*/s/ Brem Moldovsky*
Brem Moldovsky, Esq.
**BREM MOLDOVSKY, LLC**
100 N. 18th Street, Suite 300
Philadelphia, Pa 19103
Phone: (215) 546-9957

*Counsel for Plaintiff*